## ANTHONY v. HITCHCOCK.

### (Circuit Court, W. D. Michigan. January 4, 1896.)

CONTRACTS—RESTRAINT OF TRADE—GENERAL RESTRICTION.

Plaintiff's declaration alleged that he was engaged in conducting a coal and fish business at a dock on a navigable river, and was the owner of adjoining land, with riparian rights, suitable for carrying on a similar business; that he sold such land and riparian rights to defendant, and defendant, in consideration of such sale, agreed not to buy or sell coal or traffic in the buying or selling of fish, and not to do anything that would conflict with the coal or fish business of plaintiff; yet that defendant, since the execution of such agreement, had leased the premises purchased from plaintiff to a firm of coal merchants, for the purpose of carrying on a coal and fish business, in competition with that of plaintiff, to his damage. *Held*, that it could not be adjudged that the contract, as alleged, was contrary to public policy, as being in restraint of trade, and that, upon such declaration, it appeared that the plaintiff had a good cause of action.

### On Demurrer to Plaintiff's Declaration.

The declaration in this cause was in assumpsit, and, in substance, alleged: That heretofore, to wit, on the 24th day of February, A. D. 1892, at the village of Detour, in the county of Chippewa and state of Michigan, said plaintiff was engaged in the business and occupation of keeping and operating a certain dock in said village, leased by him from one George Dawson for a term of years ending December 1, 1898, at an annual rental, situated on the shore of St. Mary's river, for the purpose of storing and handling coal, and selling the same to steamboats, tugs, and vessels using and passing through said river, and to purchasers generally, and for the purpose of carrying on the business of handling, buying, and selling fish, and at said dock had an established fish business, of great value to him, to wit, $20,000 per annum; and that said plaintiff was also the owner of certain pieces or parcels of land

situate in the village of Detour, fronting upon the said river (in said declara-. tion fully described), with the riparian rights appurtenant thereto, upon which piece or parcel of land was a certain other dock suitable for carrying on a coal and fish business in competition with the coal and fish business of plaintiff, and to which were appurtenant riparian rights and privileges that might be used for extending and enlarging said dock. That the defendant, in part consideration of the execution and delivery by plaintiff and wife of a warranty deed of the land and property in the declaration described, on the day and year aforesaid, made and entered into a written agreement with plaintiff, wherein and whereby the defendant agreed and promised, among other things, not to purchase or offer for sale any coal, except such as said defendant should require for his own use, to any steamers, boats, or persons, and also not to traffic in the buying and selling of fish, except fish that might be caught with. his own nets, and not to do anything that would conflict with the coal or fish business of plaintiff (a copy of which agreement was attached to the declaration, and made a part thereof, and marked "Exhibit A"). Yet said defendant, disregarding his said promise, etc., had since the execution of said agreement done certain things that conflicted with the coal and fish business of said defendant, as follows: That defendant, by a written lease (a copy of which was attached, etc.), had leased to Pickands, Mather & Co., coal merchants of Cleveland, Ohio, the dock appurtenant to the premises deeded by plaintiff to defendant, for a period of five years from and after December 10, A. D. 1893, at an annual rental of $3,000, "for the purpose of carrying on on said dock a coal and fish business," and had permitted said Pickands, Mather & Co. to take possession of said dock property, and to enlarge, strengthen, and extend the same, and to occupy and use the same, in conducting their own coal and fish business, in competition with that of plaintiff. Wherefore, and by reason of the competing coal and fish business permitted to be conducted on said dock, and by reason of the premises, said coal and fish business of plaintiff had been subjected to an injurious competition, and said business had decreased, and the profits therefrom had been reduced, and the plaintiff had suffered damages, to wit, etc.

Exhibit A, attached to said declaration, runs as follows:

"This agreement, made and entered into this 24th day of February, A. D. 1892, by and between Thomas C. Anthony, of Sault Ste. Marie, Michigan, and W. D. Hitchcock, of Chicago, Ill.: The party of the first part, Thos. C. Anthony, has this day sold and conveyed unto the said W. D. Hitchcock all the property at Detour, Michigan, known as the Hurd & Heinstein and Moiles property, for the sum of ten thousand dollars. And the said W. D. Hitchcock, party of the second part, agrees with the said Thomas C. Anthony to not purchase or offer for sale any coal, except what coal they may require for their own use, to any steamers, boats, or persons, and also to not traffic in the buying or selling of fish, except fish that may be caught with his own nets, or do anything that will conflict with the said coal or fish business of the said Thomas C. Anthony, and further agrees to not act as general agent and ticket agent or in any capacity for any steamer or line of boats, nor to do any business whatever with said steamer or boats of any kind, as receiving and shipping of freight, merchandise, etc., except to receive their own goods and merchandise, and ship out same, when necessary, for the period of seven (7) years from date hereof. And, further, that the said party of the second part agrees that while said Anthony gives full warranty deed, as required by said Hitchcock, yet said sale is made with full knowledge of said Hitchcock of the conditions of the deeds given by George Dawson, a former owner, regarding restrictions as to dock or shipping privileges, and said Anthony shall not be held responsible for any damage to said Hitchcock by reason of said restrictions in said Dawson conveyances. And, further, that the said Anthony may have the contents of one of the ice houses on said premises the present season, the same having been recently filled by said Anthony, together with the privilege of entering on said premises, and getting said ice at his will, during the coming season.                                [Signed]   W. D. Hitchcock.

"T. C. Anthony."

The demurrer was based upon the contention that the contract set up in the declaration was opposed to public policy, and therefore void.

H. M. Oren, for plaintiff.

M. F. McDonald, for defendant.

SEVERENS, District Judge (after stating the facts as above). The declaration states that, in part consideration of the conveyance of land, the defendant agreed, among other things, that he would not do anything which would conflict with the coal or fish business of the plaintiff. It then proceeds to allege that the defendant had leased the premises conveyed to other parties for the purpose of carrying on the same business as that of the plaintiff, and had permitted them to enlarge and occupy and use the dock thereon in conducting that business in competition, etc. These premises are alleged to have been in the vicinity of the plaintiff's place of business on the same stream, and the business is alleged to be a competing business with that of the plaintiff, and injurious thereto, and it is alleged that the plaintiff has suffered therefrom a diminution of business and reduction of profits, etc.

The leasing of the premises "for the purpose" of the conducting by others of a business in competition with that of the plaintiff, and permitting them to carry on the competing business thereon, would appear to me to be a breach of an agreement not to do anything which would conflict with the plaintiff's business. I think, therefore, that the declaration is sustainable upon grounds which do not necessarily involve the question at large, how far contracts must be held void as being in restraint of trade. The modern decisions seem to be settling down upon the test whether the restriction is one limited to the protection of the plaintiff's business. If it is, it is recognized as reasonable and lawful; and otherwise if not so limited.

Upon the argument it was contended that the agreement was for an unlimited restraint of the defendant's doing those kinds of business anywhere. The plaintiff contends that, upon a fair construction of the agreement, the restraint is limited to the premises sold to the defendant. And there are several considerations leading to that conclusion. There is the recital of the conveyance of the premises. They were adapted to such business. The alternative words, "or do anything that will conflict with the said coal or fish business" of the plaintiff, are an implication of a limitation. And, further, it is a rule of construction that, if the words will bear an interpretation adapted to express a lawful purpose, that interpretation will be given, so that the agreement shall have effect rather than fail utterly. But the declaration does not allege such a contract as this would be with such implications in respect of the words which relate to the defendant going into the coal or fish business; and, upon demurrer, the court must treat the contract as it is alleged in the pleadings. I do not, therefore, decide this question of construction. But I am satisfied that the stipulation that the defendant should not do anything to conflict with the plaintiff's business is valid, as alleged, and upon a sufficient consideration.

The demurrer is overruled, and leave to plead over is allowed to the defendant.